**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL JONES,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID J. DENOTARIS et al.,** | : | **No. 13-4500** |
| *Defendants*. | : | |

**A M E N D E D   M E M O R A N D U M**

PRATTER, J.                                                                              JANUARY 16, 2015

This case presents novel questions of law in the Third Circuit: first, whether a plaintiff alleging violations of the Randolph-Sheppard Act ("RSA"), 20 U.S.C. § 107 *et seq.*, may proceed directly against a state licensing agency and its officials under 42 U.S.C. § 1983, and, second, whether he may proceed without "exhausting" the procedures explicitly provided for by the RSA. For the reasons that follow, the Court answers both questions in the negative.

## I.      THE RANDOLPH-SHEPPARD ACT

"For the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting," the Randolph-Sheppard Act authorizes licensed blind persons "to operate vending facilities on any Federal property," 20 U.S.C. § 107(a), and, further, requires the federal government and cooperating state licensing agencies to give priority to licensed blind in "the operation of [these] vending facilities," *id.* § 107(b). Blind licensees operating vending facilities on federal property earn the income the machines generate. *Id.* § 107d-3(a).

The RSA creates partnerships between the federal government and states that choose to participate. On the federal side, the RSA assigns to the United States Secretary of Education

rulemaking, information-gathering, and oversight responsibilities. *See generally id.* § 107a(a). One such responsibility is the "designat[ion of] the State agency for the blind in each State . . . to issue licenses to blind persons . . . for the operating of vending facilities on Federal . . . property." *Id.* § 107a(a)(5). State licensing agencies, in turn, are "authorized, with the approval of the [federal authority] in control of" federal property, "to select a location for [a vending] facility and the type of facility to be provided." *Id.* § 107a(c). State licensing agencies then select the operators of these facilities, and they must "give preference to blind persons who are in need of employment." *Id.* § 107a(b). Each participating state must establish an elected Committee of Blind Vendors, which is "fully representative of all blind licensees in the State program," *id.* § 107b-1(2), and which participates in "receiving [such] grievances of blind licensees and serving as advocates for such licensees," *id.* § 107b-1(3)(B).

The RSA specifically provides a grievance procedure for "dissatisfied" blind vendors: state licensing agencies participating in the program must agree "to provide to any blind licensee dissatisfied with any action arising from the operation or administration of the vending facility program an opportunity for a fair hearing," and, further, "to submit the grievances of any blind licensee not otherwise resolved by such hearing to arbitration as provided in section 107d-1." *Id.* § 107b(6). Section 107d-1, in turn, lays out the hearing and arbitration procedure to be followed by "[a]ny blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program." *Id.* § 107d-1(a).[1] The state licensing agency,

---

[1] The RSA also lays out a similar procedure, inapplicable here, to govern situations in which "any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of [the RSA]." 20 U.S.C. § 107d-1(b).

upon a blind licensee's "request," must provide "a full evidentiary hearing," *id.*—and, of course, one that is also "fair," *id.* § 107b(6).

Then,

> [i]f such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

*Id.* § 107d-1(a). Section 107d-2 requires the Secretary of Education to "convene an ad hoc arbitration panel" when he receives such a complaint, delineates how such panels are to be constituted, and requires the panel to "give notice, conduct a hearing, and render its decision." *Id.* § 107d-2.

Although the RSA nowhere creates a private cause of action, § 107d-2 also subjects the panel's decision "to appeal and review as a final agency action for purposes of chapter 7 of such Title 5"—that is, to judicial review in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, and, specifically, 5 U.S.C. § 706.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Michael Jones has sued David J. DeNotaris, Director of the Pennsylvania Bureau of Blindness and Visual Services ("BBVS"), Office of Vocational Rehabilitation ("OVR"), as well as several other officials in that Commonwealth agency. Mr. Jones, who is African-American, has been a licensed blind operator in BBVS's Business Enterprises Program for a number of years. Mr. Jones alleges that because of the OVR's racial prejudice, "it took [him] three (3) years

---

[2] The Court assumes the following factual background to be true for the purposes of adjudicating the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *infra* Part III (Standard of Review).

to get into the BEP when it typically takes only 16 weeks." Compl. ¶ 14. In the ensuing years, Mr. Jones alleges, the discriminatory treatment continued. In 2005, for instance, the OVR awarded a facility to a white blind vendor with three years' less seniority than him, "despite the fact that bids are required to be awarded based on seniority." Compl. ¶ 15.

In May 2011, Mr. Jones was awarded Vending Facility 805 ("VF 805"), but he "and his staff [soon] began to experience . . . racial harassment and his vending machines were vandalized [with] racial slurs." Compl. ¶ 19. When Mr. Jones complained to the OVR officials he has named in this suit, they "ignored his complaints and did nothing to remedy the situation"; they did not even "acknowledge[] Jones's complaints" until he complained to the Postal Inspector General. Compl. ¶ 20. This type of treatment, Mr. Jones alleges, is similar to that experienced by another black blind vendor at the same site. Compl. ¶ 25.

In August 4, 2011, the Postal Service locked Mr. Jones out of VF 805 with, he alleges, the OVR's acquiescence, in order to permit a nonblack, sighted contractor to operate VF 805. Only when Mr. Jones "agreed to utilize a non-Black, sighted vending contractor, West Dairy, Inc., to operate the location," was he allowed back to operate VF 805, on September 5, 2011. Compl. ¶ 22. The OVR, Mr. Jones alleges, took these actions because, with West Dairy operating VF 805, the "OVR"—presumably as opposed to him or another blind licensee— "received a percentage of the revenue generated there." Compl. ¶ 23.

When the OVR decided to rebid VF 805 in August 2012, it denied Mr. Jones's bid because it "had already entered into a contract with a sighted vendor." Compl. ¶ 26. And when the OVR again "decided to re-bid the contract" in October 2012, after the Defendants had "improperly placed Jones on probation allegedly for failing to pay set-aside fees and submit

monthly reports," the OVR denied Mr. Jones's rebid out of discriminatory animus rather than these stated reasons, which were, Mr. Jones alleges, purely pretextual. *Id.*

Mr. Jones appealed the denial. On February 29, 2012, the state hearing officer granted Mr. Jones partial relief, but no damages for lost income. Mr. Jones again appealed, this time to the Secretary of Education,[3] as provided for by §§ 107d-1 and 107d-2 of the RSA. On November 1, 2012, Mr. Jones also filed an appeal to the OVR for the decision of the individual Defendants "to place him on probation allegedly for failing to pay set-aside fees and submit monthly reports," Compl. ¶ 28. He also filed, through 2012 and 2013, several other appeals to the OVR for what he alleges were the agency and its employees' "discriminatory and retaliatory" actions. Compl. ¶¶ 23–32.

In his Amended Complaint (Docket No. 6), Mr. Jones presents two counts: Count I, for the Defendants' alleged violation of 42 U.S.C. § 1983 by their violation of the Randolph-Sheppard Act, and Count II, for the Defendants' alleged violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134. The Defendants have moved to dismiss certain components of both claims (Docket No. 8), as set out in the margin.[4]

---

[3] Mr. Jones's Complaint does not state that the appeal was to the Secretary of Education, but, rather, that "[t]he appeal is docketed at R-S/11-04." Compl. ¶ 27. Given the statutory scheme discussed above, the appeal must have been to the Secretary of Education; further, the Court may consider a "document *integral to or explicitly relied* upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted), and Defendants have attached just such a document here: a letter from the United States Department of Education "acknowledg[ing] receipt of a complaint filed by Mr. Michael Jones against the Pennsylvania Office of Vocational Rehabilitation Bureau of Blindness and Visual Services," docketed at "R-S/11-04," Mot. Dismiss Ex. A (Docket No. 8-1).

[4] In addition to challenging Mr. Jones's RSA claim, the Defendants also moved to dismiss (a) Mr. Jones's § 1983 claims against them in their official capacities as barred by the Eleventh Amendment and (b) Mr. Jones's ADA claims against the Defendants in their individual capacities. Mr. Jones agrees that the Motion to Dismiss should be granted on these grounds, and

The only issues currently before the Court—as the Court characterizes the parties' dispute over "exhaustion"—are whether a plaintiff pursuing alleged violations of the Randolph-Sheppard Act may proceed directly against a state agency under 42 U.S.C. § 1983, as Mr. Jones purports to do, and, further, whether any individual purporting to sue for violation of the RSA may proceed at all (under § 1983 or directly) without first "exhausting" the procedures explicitly provided for by the RSA.

Mr. Jones alleges that he "was not required to exhaust administrative remedies with respect to any of [his] appeals" because, given the "numerous and continuous discriminatory and retaliatory actions of the Defendants," pursuing such remedies "would have been futile because of the certainty of an adverse decision." Compl. ¶ 35. "Moreover," he asserts, "there is no requirement that [he] exhaust any administrative remedies" before bringing an action under § 1983. Compl. ¶ 36.

The Defendants, by contrast, citing case law from the Courts of Appeals for the D.C. and Sixth Circuits, argue that "exhaustion of the administrative remedies is required before a party seeks recourse through the federal court system," Mot. Dismiss 10, and that Mr. Jones has not made any showing to justify application of the narrow futility exception. In response, Mr. Jones contends that the Defendants "have admitted" that "no cases in the Eastern District [of Pennsylvania] or the Third Circuit have held that exhaustion of administrative remedies is required before a party seeks to enforce the Randolph-Sheppard Act through the federal court system," and that that lack of precedent "alone" warrants denial of Defendants' Motion to Dismiss. Resp. 3 (Docket No. 11-2). But regardless, he asserts, he should have the opportunity to prove that exhaustion, as he has alleged, would have been futile.

---

so it will be (arguably, these claims are straw men, as Mr. Jones does not seem to raise them— for instance, the Amended Complaint refers to the Defendants' "official capacities" in Count II).

### III.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff's complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.

2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court must also accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). But that admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## IV.   DISCUSSION

The parties' dispute over "exhaustion" in fact raises several interrelated and more nuanced questions. The first concerns Mr. Jones's contention that he need not exhaust remedies

under § 1983. The second is whether pleading futility alone is sufficient to bypass whatever exhaustion requirement may apply.[5]

### A.    Mr. Jones § 1983 Randolph-Sheppard Act Claim

The Third Circuit Court of Appeals recently explained in *Hildebrand v. Allegheny County*, 757 F.3d 99 (3d Cir. 2014), that because § 1983 is a vehicle for vindicating rights conferred elsewhere by federal law, a plaintiff cannot bring a claim under § 1983 "where Congress has evinced an intent to preclude such claims through other legislation." *Id.* at 104 (quoting *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009); citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Such suit preclusion need not be explicit, *id.*: "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981); *see Hildebrand*, 757 F.3d at 104-07 (discussing controlling Supreme Court case law and reasoning).

In this preclusion inquiry, the Supreme Court has explained, courts "place[] primary emphasis on the nature and extent of that statute's remedial scheme." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 253 (2009). Accordingly, for instance, the Court has held that Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a), does not preclude § 1983 claims of sex discrimination under the Equal Protection Clause because Title IX's only "remedies—withdrawal of federal funds and an implied cause of action—stand in stark contrast to the 'unusually elaborate,' 'carefully tailored,' and 'restrictive' enforcement schemes of the

---

[5] As a threshold matter, Mr. Jones's contention that the lack of binding precedent entitles him to proceed on his RSA claim is unwarranted. Such a contention would prevent courts from defining the boundaries of novel issues and need be entertained no further.

statutes at issue in" *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20 (Federal Water Pollution Control Act and Marine Protection, Research, and Sanctuaries Act), *Smith v. Robinson*, 468 U.S. 992 (1984) (Education of the Handicapped Act), and *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) (Telecommunications Act)—statutes which have, unlike Title IX, "administrative exhaustion requirement[s and] notice provisions," as opposed to Title IX's "implied private right of action" allowing plaintiffs to "obtain the full range of remedies." *Fitzgerald*, 555 U.S. at 255-56.

In *Rancho Palos Verdes*, by contrast, the Supreme Court held that the Telecommunications Act, "which adds no remedies to those available under § 1983, and limits relief in ways that § 1983 does not," 544 U.S. at 122, could not be enforced through § 1983, because such enforcement "would distort the scheme of expedited judicial review and limited remedies created by" the Telecommunications Act, *id.* at 127. The Court explained that "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Id.* at 121 (citing *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). In short, as the Court has recently reiterated, "the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not." *Id.* at 121; *accord Fitzgerald*, 555 U.S. at 256.

Accordingly, in *Hildebrand*, the Third Circuit Court of Appeals held, in agreement with a number of "sister Courts of Appeals . . . that the [Age Discrimination in Employment Act] precludes § 1983 claims of age discrimination," 757 F.3d at 107, because § 1983 suits "would severely undermine . . . the enforcement mechanism created by Congress under the ADEA" by

providing plaintiffs with "direct and immediate access to the federal courts," *id.* at 107, (citations omitted). Further, the Court of Appeals reasoned, "we do not believe that the rights and protections of the ADEA and the Equal Protection Clause differ in such significant ways as to demonstrate congressional intent to allow parallel § 1983 claims alleging age discrimination." *Id.* at 109.

These well-established principles make clear that the Randolph-Sheppard Act is incompatible with § 1983 to the extent that a plaintiff seeks to use § 1983 to remedy alleged violations of the RSA, because the RSA provides its own remedial framework. Although the RSA "is silent as to the type of relief that a vendor-triggered arbitration panel may grant," *Sauer v. U.S. Dep't of Educ.*, 668 F.3d 644, 648 (9th Cir. 2012); *accord New Hampshire v. Ramsey*, 366 F.3d 1, 7 (1st Cir. 2004); *Ga. Dep't of Human Res. v. Nash*, 915 F.2d 1482, 1488 (11th Cir. 1990), as described above, the RSA has been interpreted to allow a blind licensee "dissatisfied with any action arising from the operation or administration of the vending facility program" to submit a grievance to the appropriate state licensing agency. 20 U.S.C. § 107d-1(a).

The RSA's procedural provisions for a dissatisfied vendor are narrow: he may[6] file a grievance and then request a full, fair hearing with the state licensing agency, and then, if dissatisfied with that result, he may appeal to the United States Secretary of Education to convene a panel to render an arbitration decision that "shall be final and binding on the parties," except by resort to the judicial review provisions of the Administrative Procedure Act. 20 U.S.C. § 107d-1(a). The relevant provision of the APA, of course, provides that federal "agency action"

---

[6] On the use of the word "may" and the related provision governing arbitration between a state licensing agency and the federal government (20 U.S.C. § 107d-1(b)), see, for example, *Kentucky, Education Cabinet, Department for the Blind v. United States*, 424 F.3d 1222, 1227-29 (Fed. Cir. 2005), and *Sauer v. U.S. Department of Education*, 668 F.3d at 651.

may be set aside if it is, among other things, "arbitrary, capricious, [i]n abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).[7] To permit him instead to file a § 1983 action would be to permit an end run on this careful scheme Congress has crafted. As the Sixth Circuit Court of Appeals stated more than 30 years ago,

> Congress' decision to provide administrative and arbitration remedies for aggrieved blind vendors clearly evidences a policy judgment that the federal courts should not be the tribunal of first resort for the resolution of such grievances. Rather congressional policy as reflected in the 1974 amendments is that blind vendors must exhaust their administrative and arbitration remedies before seeking review in the district courts.

*Fillinger v. Cleveland Soc. for the Blind*, 587 F.2d 336, 338 (6th Cir. 1978). Other courts have agreed, as noted in the discussion below.

In this respect, of course, the Randolph-Sheppard Act presents an even stronger case for the preclusion of a § 1983 cause of action than does the Age Discrimination in Employment Act ("ADEA") in *Hildebrand*. Under the ADEA, a plaintiff can proceed in federal court so long as he attempts to exhaust, even if the Equal Employment Opportunity Commission ("EEOC") takes no action, whether because it thinks the suit unmeritorious or otherwise. *See Hildebrand*, 757 F.3d at 109 ("Unless the EEOC elects to file suit to enforce the employee's claim, an employee may commence suit sixty days after filing a charge."). The RSA, by contrast, in relatively explicit terms, limits judicial review to review of *federal agency action* under the Administrative Procedure Act.[8]

---

[7] Of course, APA review is based on something of "a legal fiction: an arbitration panel is composed of members appointed by the parties to the arbitration, not of Department of Education officials whose expertise merits [judicial] deference." *Sauer*, 668 F.3d at 650-51.

[8] *But cf. supra* note 7. It also bears recalling here that the RSA regulates operation of vending facilities *on federal property*, even if that scheme is operated, in many instances, by state licensing agencies.

The Court recognizes that there is some uncertainty as to whether the Eleventh Amendment permits RSA awards of retrospective money damages against state licensing agencies. Two decades ago, it was "widely recognized that th[e] language [of § 107d-1(a)] permits arbitration panels to award compensatory relief." *Premo v. Martin*, 119 F.3d 764, 769 (9th Cir. 1997); *see also, e.g.*, *Tenn. Dep't of Human Servs. v. U.S. Dep't of Educ.*, 979 F.2d 1162, 1165 (6th Cir. 1992) ("The natural reading of these provisions is that the arbitration panel may consider and resolve any complaint of a vendor arising out of the program, including a complaint that the state agency has taken money to which the vendor is entitled."). In fact, "[i]n drawing this conclusion, courts have emphasized that the prevailing conception at the time the Act was passed was that arbitral resolution of disputes involved awards of back pay and other forms of compensatory relief." *Premo*, 119 F.3d at 770. The Third Circuit Court of Appeals made such observations when it determined that "the statutory language is unambiguous" that RSA arbitrators are "authorized to award compensatory damages." *Del. Dep't of Health & Soc. Servs. v. U.S. Dep't of Educ.*, 772 F.2d 1123, 1137 (3d Cir. 1985). Recently, however, in response to intervening Supreme Court case law, several courts have cast doubt on the conclusion that an RSA arbitration panel can, in fact, award retrospective money damages against a state because the waiver of sovereign immunity may not be explicit enough, even though a state's participation in the RSA is voluntary, because the RSA's statutory provisions themselves are, as noted earlier, silent on the relief available. *See, e.g.*, *Wis. Dep't of Workforce Dev. v. U.S. Dep't of Educ.*, 667 F. Supp. 2d 1007, 1013-14 (W.D. Wis. 2009); *cf. also Tenn. Dep't of Human Servs.*, 979 F.2d at 1168-69 (holding that the Eleventh Amendment bars a federal court from enforcing any damages award against a state licensing agency); *New Hampshire v. Ramsey*, 366 F.3d 1, 9-23 (discussing waiver of Eleventh Amendment immunity).

But whether or not compensatory damages are available in (the federal component of) arbitration against the state licensing agency (or its employees)—presumably because a state agency could award compensatory damages against itself, without any sovereign immunity problem—an issue the Court need not and does not decide today—detracts not at all from the fact that the RSA is a narrow remedial scheme that must be read as the mandatory alternative Congress has specified to suit under § 1983. For one, what recent case law there is suggests that if retrospective damages are not available in arbitration before a panel convened by the Secretary because of the Eleventh Amendment, nor will they be available in federal court against the state licensing agency, under § 1983 or otherwise. On the other hand, one might submit, under § 1983, a plaintiff could circumvent state sovereign immunity by suing individual employees of a state licensing agency, as Mr. Jones has here, whereas if he cannot sue directly under RSA, he may not be able to. In judicial review of arbitration convened by the Secretary of Education, of course, the defendant will be the United States Department of Education, whereas before the Secretary's arbitration panel the parties adverse to the blind vendor are, presumably, the state licensing agency and, perhaps, its individual officials. Even if these premises are sound, however, they do not change the conclusion that the RSA's more specific scheme displaces the reach of § 1983. Any such differences in defendants amenable to suit or remedies available are merely the result of what Congress, in designing the RSA's review vehicle, intended.

Indeed, in *Hildebrand*, the Third Circuit Court of Appeals explained that the fact that "the potential defendants are different under the ADEA and § 1983" is not "significant enough to demonstrate congressional intent to permit both claims." *Hildebrand*, 757 F.3d at 109-10; *see id.* at 109 n.1 ("Under the ADEA, a plaintiff may sue his employer, an employment agency, or a labor organization. 29 U.S.C. § 623. In contrast, a § 1983 plaintiff can sue an individual whose

actions caused a deprivation of his constitutional rights."). Nor is it here. Even if, for instance, state licensing agencies have immunity from retrospective money damages under the RSA, they would, too, under § 1983, and the fact that § 1983 might otherwise allow an aggrieved blind vendor to sue the licensing agency's officials in their individual capacities is not, in this Court's view, enough to suggest that Congress intended the § 1983 route to remain open.

"[T]o permit a direct, private right of action by a vendor against the federal agency would wholly frustrate the Randolph-Sheppard Act's dual procedure of administrative and arbitration remedies for resolving disputes." *Middendorf v. U.S. Gen. Servs. Admin.*, 92 F.3d 1193, at *1 (9th Cir. 1996) (table opinion). The reasoning of the Court of Appeals for the D.C. Circuit in the RSA "exhaustion" context, addressed further below, is just as relevant and compelling with regard to preclusion of suit under § 1983: "It is unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could, whenever it chose, circumvent the system and seek *de novo* determination in federal court." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 103 (D.C. Cir. 1986).

\*     \*     \*

To be clear, however, the Court does *not* hold that Mr. Jones cannot bring another type of claim under § 1983, such as a claim for violation of the Equal Protection Clause. More precisely, the Court need not decide today whether a § 1983 claim for race discrimination based on Defendants' allegedly discriminatory treatment of Mr. Jones in vending machine contracting is precluded by the Randolph-Sheppard Act's more specific grievance and arbitration provisions. The two questions are different, although surely capable of being related. *Cf., e.g., Smith*, 468 U.S. at 1008-09 & n. 11 (1984) ("As petitioners emphasize, their § 1983 claims were not based

on alleged violations of the EHA, but on independent claims of constitutional deprivations. . . ."

(footnote omitted)).

Thus, for instance, while the ADEA precludes *age* discrimination suits, the ADEA's

subject matter is, in fact, age discrimination. As the Third Circuit Court of Appeals recently

explained in *Hildebrand*,

> The ADEA is intended to "promote employment of older persons based on their
> ability rather than age; to prohibit arbitrary age discrimination in employment;
> [and] to help employers and workers find ways of meeting problems arising from
> the impact of age on employment." 29 U.S.C. § 621(b). Under the Equal
> Protection Clause, age classifications receive only rational basis review. *Kimel v.*
> *Florida Bd. of Regents*, 528 U.S. 62, 83 (2000) ("States may discriminate on the
> basis of age without offending the Fourteenth Amendment if the age classification
> in question is rationally related to a legitimate state interest."). By prohibiting
> "arbitrary age discrimination," the ADEA encompasses the protections afforded
> by the Fourteenth Amendment, while significantly expanding prohibitions on age
> discrimination elsewhere.

*Hildebrand*, 757 F.3d at 109.

The Randolph-Sheppard Act, by contrast, requires state licensing agencies and the federal

government to *prefer* blind to sighted vending machine operators. Thus, to the extent Mr. Jones's

claim is that the OVR discriminated against him because he is blind (and this does not seem to be

his claim), a § 1983 claim with the same predicate would be precluded. But the fact that a blind

vendor is "dissatisfied with *any* action arising from the operation or administration of the

vending facility program," 20 U.S.C. § 107d-1(a) (emphasis added), does not necessarily  mean

that he is precluded from bringing a complaint against the OVR based on its violation, as a state

actor, of *another* federal law. Rather, the point here is that Mr. Jones cannot bring a § 1983

action predicated on the OVR's violation *of the RSA*. If the OVR's conduct violates another

federal law, the Court would be faced with a different question, with, possibly, a different

answer. A holding that the RSA precludes suit under § 1983 in these situations would produce an

anomalous result: because the RSA's specific grievance and arbitration provisions apply, by their

terms, only to "[a]ny *blind licensee*," 20 U.S.C. § 107d-1(a), then either (a) a sighted vendor could never bring a race discrimination claim (if the RSA precludes all § 1983 suits) or (b) a blind vendor would be faced with a more restrictive remedial scheme than a sighted vendor (because a sighted vendor is not limited by § 107d-1(a)'s terms)—a result Congress could not have intended.

These observations are consistent with the Sixth Circuit Court of Appeals' approach. In *Fillinger v. Cleveland Society for the Blind*, 587 F.2d 336, the Sixth Circuit Court of Appeals noted that the vendors also raised § 1983 claims. *Id.* at 338. When the "defendants ask[ed the court] to clarify the effect of [its] order on plaintiffs'" § 1983 claim, the Court explained that

> [t]he fact dispute underlying plaintiffs' § 1983 claim is closely related factually to their claims under the Randolph-Sheppard Act and is subject to arbitration. It is likely that any arbitration decision will include the dispute on which the § 1983 claim is based. Our order reversed the dismissal order of the district court and directed that the proceedings on the § 1983 claim are to be stayed pending the outcome of the administrative and arbitration process.

*Fillinger v. Cleveland Soc. for the Blind*, 591 F.2d 378, 380 (6th Cir. 1979).

### B.      Exhaustion Under the Randolph-Sheppard Act

The foregoing analysis regarding § 1983 also suggests several of the reasons why courts have held that an RSA plaintiff must first "exhaust." But, in fact, exhaustion here is more than what exhaustion usually means, in the sense of first having to file a grievance before a federal agency and then wait a certain time before filing suit in federal court, usually upon receipt of a right-to-sue letter. Here, the procedures specified delimit the breadth of the very right of action—judicial review, pursuant to the Administrative Procedure Act, of the decision of the Secretary of Education's arbitration panel. This is less exhaustion, as the term of art is commonly used in the doctrine, and more a type of narrow appellate review. *See* 20 U.S.C. § 107d-2(a) ("[The panel's]

decision . . . shall be subject *to appeal* and review as a final agency action . . . ." (emphasis added)). In fact, the RSA does not provide for any type of judicial recourse—and certainly not suit in the first instance—outside of review of arbitration decisions under the APA. *Cf. generally Del. Dep't of Health & Social Servs.*, 772 F.2d 1123 (3d Cir. 1985). Thus, although the Court might differ with other courts' use of the word "exhaustion," it agrees with their operative reasoning.[9]

　　As the Court of Appeals for the D.C. Circuit has explained,

　　It is a "long settled rule of judicial administration that no one is entitled to judicial
　　relief for a supposed or threatened injury until the prescribed administrative
　　remedy has been exhausted." *Myers* [*v. Bethlehem Shipbldg. Corp.*], 303 U.S.

---

[9] *See Weinberger*, 795 F.2d 90 at 102-04; *Comm. of Blind Vendors v. District of Columbia*, 28 F.3d 130, 135 (D.C. Cir. 1994); *Kentucky, Educ. Cabinet, Dep't for the Blind v. United States*, 424 F.3d 1222, 1228-29 (Fed. Cir. 2005) ("Other circuits have agreed that the arbitration of RSA complaints is mandatory. . . . Those decisions and the reasoning underlying them support our conclusion that arbitration is mandatory for claims arising from the RSA."); *Middendorf*, 92 F.3d 1193, at *1 ("Judicial review of a vendor's claim may only occur after the decision of an arbitration panel convened by the Secretary."); *Morris v. Maryland*, 908 F.2d 967, at *4 (4th Cir. 1990) (table opinion) ("[T]he Randolph-Sheppard Act mandates the exhaustion of the administrative remedies prior to instituting an action in the federal courts."); *Fillinger*, 587 F.2d at 338; *Altstatt v. Oklahoma ex rel. Bus. Enter. Program*, No. 14-0401, 2014 WL 2589318, at *2 (W.D. Okla. June 10, 2014) ("[C]ourts have consistently held that exhaustion of the RSA's dispute resolution procedure is mandatory."); *Kentucky ex rel. Cabinet for Workforce Dev. v. United States*, No. 12-0132, 2012 WL 5289659, at *3-6 (W.D. Ky. Oct. 23, 2012); *Ala. Dep't of Rehab. Servs. v. U.S. Dep't of Veterans Affairs*, 165 F. Supp. 2d 1262, 1269 (M.D. Ala. 2001) ("The Randolph–Sheppard Act's plain language does not expressly require exhaustion, but courts have construed the act's administrative framework to be mandatory."); *New York v. U.S. Postal Serv.*, 690 F. Supp. 1346, 1348-51 (S.D.N.Y. 1988); *Mass. Elected Comm. of Blind Vendors v. Matava*, 482 F. Supp. 1186, 1189 (D. Mass. 1980); *cf. Tamashiro v. Dep't of Human Servs.*, 146 P.3d 103, 126 (Haw. 2006) ("[B]ased on our examination of the overall scheme of the federal RSA and its relationship to the Hawai'i RSA, as well as federal case law, we hold that, inasmuch as the federal adjudication path applies to disputes arising from the Hawai'i RSA, the circuit court lacks subject matter jurisdiction to decide the merits of the instant case.").

For this reason, further, the principle that conditions precedent need not be pleaded with the particularity required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *see Hildebrand*, 757 F.3d at 111-12, does not apply here. Arbitration before the Secretary's panel is not a condition precedent so much as a step required to produce a decision that a federal district court can review.

[41,] 50-51 [(1938)] (footnote omitted); *see McKart* [*v. United States*], 395 U.S. [185,] 193 [(1969)]. Moreover, the policy of exhaustion "is particularly viable where an established scheme of decision making might be undermined by permitting circumvention of administrative procedures." *Wallace v. Lynn*, 507 F.2d 1186, 1190 (D.C. Cir. 1974). Here, the Act establishes a statutory scheme for enforcing statutory rights. The "long settled rule of judicial administration," *Myers*, *supra*, 303 U.S. at 50, should therefore apply. Absent a cognizable rationale for failing to pursue arbitration under the Act, appellants' action must be dismissed for failure to exhaust their administrative remedies.

*Weinberger*, 795 F.2d 90 at 104. This Court agrees, and will not permit Mr. Jones to circumvent the procedures Congress has carefully specified. And while Mr. Jones is correct that the Third Circuit Court of Appeals has not held that an RSA plaintiff must "exhaust," he has not cited a single decision to the contrary to the Court's conclusion.[10]

Mr. Jones's final argument is that proper exhaustion of his RSA claims would have been "futile," so that his claims should be excepted from the exhaustion requirement. The Court observes that futility of exhaustion, as generally understood, comes with a high bar: an adverse decision by the tribunal must be *certain*, such as where an administrative agency "believes itself to lack[] jurisdiction to act upon the dispute" or "an agency has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider." *Weinberger*, 795 F.2d at 105-06; *accord, e.g.*, *Morris*, 908 F.2d 967, at *5; *see also, e.g.*, *Altstatt*, 2014 WL 2589318, at *2. But "[a]n administrative process is not 'futile' simply because a defendant disputes a claim raised against it and submitted to the process for resolution." *Ala. Dep't of Rehab. Servs. v. U.S. Dep't of Veterans Affairs*, 165 F. Supp. 2d 1262, 1271 (M.D. Ala. 2001). In

---

[10] To be sure, there is at least one decision to the contrary (from the former United States Claims Court), but not only has the Court of Appeals for the D.C. Circuit persuasively shown its error, *see Weinberger*, 295 F.2d at 103-04 & n.21, but it no longer appears to be good law, as it has necessarily been overruled by the decision cited above from the Court of Appeals for the Federal Circuit. *See also, e.g.*, *New York v. U.S. Postal Serv.*, 690 F. Supp. 1346, 1351 (S.D.N.Y. 1988).

fact, as the Fourth Circuit Court of Appeals has explained, albeit in a nonprecedential opinion, even when a would-be RSA plaintiff seeks "to nullify the State's prior action" before "defendants [who] are [themselves] the decision-makers," such that "there can be no doubt as to the outcome," exhaustion is not necessarily futile. *Morris*, 908 F.2d 967, at *5. "If [that] argument were accepted to relieve the[] requirement of exhaustion, the doctrine of requiring the exhaustion of administrative remedies would be eviscerated." *Id.*

Even assuming that the futility exception properly applies to the exhaustion doctrine here—that is, that the exhaustion doctrine described above is applicable to what, as this Court has suggested above, is an even narrower statutory scheme than those permitting suit after technical exhaustion—the Court finds that Mr. Jones has not adequately alleged that exhaustion is futile in his situation. Although his own allegations establish that the OVR has not always ruled against him, the more important, and, indeed, per se sufficient point, is that his argument "fails to take into account the entire remedial scheme set forth in the statute," *Ala. Dep't of Rehab. Servs.*, 165 F. Supp. 2d at 1274: final review is before *the United States Secretary of Education's* arbitration panel, not an OVR decisionmaker. Thus, regardless of what the OVR does, the Secretary's panel will—and must be permitted—to have the final say. Thus, to the extent that Mr. Jones seeks to rely on the fact that he has suffered "substantial economic damage," Compl. ¶ 34, for which he must be compensated with money damages (or otherwise), he must first seek that relief before the OVR and then the Secretary's arbitration panel.[11]

---

[11] Again, the Court need not decide the Eleventh Amendment question at this juncture. *Cf. Comm. of Blind Vendors*, 28 F.3d at 135 ("As the jurisdictional issue is dispositive, we do not reach either of these challenges.").

Further, the Court expects the OVR not to needlessly delay processing Mr. Jones's grievances, and especially not in an attempt to frustrate judicial review by preventing a panel convened by the Secretary of Education from reviewing the OVR's decision(s). Evidence of such

The Court will therefore dismiss Count I of Mr. Jones's Amended Complaint with prejudice as to Mr. Jones's § 1983 claim predicated on the Randolph-Sheppard Act, and it will stay the remainder of Count I as to Mr. Jones's request for direct review of his RSA claims.[12]

## V.     CONCLUSION

For the foregoing reasons, the Court will dismiss Count I in part, with prejudice as to bringing a claim under 42 U.S.C. § 1983 for violation of the Randolph-Sheppard Act, but without prejudice as to timely bringing a § 1983 claim for any alleged violation of another federal right. Further, it will stay Count I in part, with respect to Mr. Jones's direct Randolph-Sheppard Act claims, until he secures a decision from an arbitration panel convened by the Secretary of Education, assuming that he elects to pursue this claim.

Further, the Court will dismiss as unopposed any § 1983 claims against the Defendants in their official capacities, as well as any ADA claims against the Defendants in their individual capacities.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

dilatory behavior would, quite likely, suffice to satisfy any futility requirement and, moreover, serve as circumstantial evidence of retaliatory behavior that might otherwise be cognizable under a § 1983 claim for, for instance, race discrimination or First Amendment retaliation.

[12] Although Mr. Jones did not request a stay, other courts have stayed RSA actions pending exhaustion of the RSA's grievance and arbitration procedures. *See, e.g.*, *Fillinger*, 587 F.2d at 338 ("[W]e believe that the fairest disposition of the case on appeal is to reverse the final order of the district court dismissing the complaint and remand the case to the district court with instructions to retain jurisdiction of the case and to stay all further proceedings until plaintiffs have had an opportunity to exhaust their administrative and arbitration remedies."); *Mass. Elected Comm. of Blind Vendors v. Matava*, 482 F. Supp. 1186, 1189 (D. Mass. 1980).